BELINDA M. VEGA, SB No. 208236
BMVega@Venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901

PAUL J. BATTISTA, Fla. Bar No. 884162
PJBattista@Venable.com
Pro Hac Vice Pending
MARIAELENA GAYO-GUITIAN, Fla. Bar No. 813818
Pro Hac Vice Pending
ERIC D. JACOBS, Fla. Bar No. 85992
Pro Hac Vice Pending
EJacobs@Venable.com
VENABLE LLP
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: 305.349.2300
Facsimile: 305.349.2301

*Proposed Attorneys for Debtors, The Little Brown Box Pizza, LLC and Kustom Partner, LLC*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>THE LITTLE BROWN BOX PIZZA, LLC &<br><br>KUSTOM PARTNER, LLC<br><br>Jointly Administered Debtors. | Lead Case No. 8:25-bk-13452-MH<br><br>Chapter 11<br><br>Subchapter V Case<br><br>Jointly administered with Case No.8:25-bk-13453-MH<br><br>**NOTICE OF LODGING [PROPOSED] ORDER GRANTING MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) GRANTING POST PETITION SECURITY INTEREST AND ALLOWANCE OF SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTION 365(C) AND 364(D) OF THE BANKRUPTCY CODE, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF; AND SUPPORTING DECLARATIONS** |

| | |
|---|---|
| ☒ Affects All Debtors<br>☐ Affects The Little Brown Box Pizza, LLC Only<br>☐ Affects Kustom Partner, LLC Only | Date:<br>Time:<br>Place: 411 W. Fourth St.<br>Santa Ana, CA 92701 |

The Little Brown Box Pizza ("LBBP"), through the undersigned counsel, hereby submit the [Proposed] Motion for Entry of an Order (I) Authorizing the Debtors to Obtain PostPetition Financing, (II) Granting PostPetition Security Interest and Allowance of SuperPriority Administrative Expense Status Pursuant to Sections 365(c) and 364(d) of the Bankruptcy Code, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief; and Supporting Declarations

DATED: December 23, 2025

*/s/ Belinda M. Vega*
Belinda M. Vega
Paul J. Battista
Mariaelena Gayo-Guitian
Eric D. Jacobs
Venable LLP

Proposed Attorneys for Debtors, The Little Brown Box Pizza, LLC and Kustom Partner, LLC

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2049 Century Park East, Suite 2300, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): Notice of Lodging [Proposed] Order for Motion for Entry of an Order (I) Authorizing the Debtors to Obtain PostPetition Financing, (II) Granting PostPetition Security Interest and Allowance of SuperPriority Administrative Expense Status Pursuant to Sections 365(c) and 364(d) of the Bankruptcy Code, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief; and Supporting Declarations
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 23, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| US Trustee: United States Trustee (SA) | ustpregion16.sa.ecf@usdoj.gov |
| Ronald K. Brown, Jr., on behalf of Creditor Cypress Village Retail Center, LP | ron@rkbrownlaw.com |
| J. Bennett Friedman, on behalf of Debtor The Little Brown Box Pizza, LLC | jfriedman@flg-law.com, msobkowiak@flg-law.com; jmartinez@flg-law.com cbryant@flg-law.com |
| Dustin P Branch, on behalf of Creditor ASVRF Dublin Place, LP | branchd@ballardspahr.com; carolod@ballardspahr.com; zarnighiann@ballardspahr.com |
| Roberg Paul Goe (TF) | bktrustee@goeforlaw.com kwareh@goeforlaw.com bkadmin@goeforlaw.com C187@ecfcbis.com; kmurphy@goeforlaw.com rgoe@goeforlaw.com |
| Ernie Zachary Park, on behalf of Creditor Irvine Spectrum Center LLC | ernie.park@bewleylaw.com |
| William McCormick c/o TN Dept of Revenue<br>c/o TN Attorney General's Office, Bankruptcy Division<br>P.O. Box 20207<br>Nashville, TN 37202-0207 | bill.mccormick@ag.tn.gov |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) December 23, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United

States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**California Department of Tax and Fee Administration**
**PO Box 942879**
**Sacramento CA 94279**

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) December 23, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| ASVRF Dublin Place, LP | jbrodsky@aracapital.com |
| Campus Pointe Commercial L.P. | epeterson@lance-kashian.com |
| Cerritos TC Property, LLC | jscott@vestar.com |
| Cheeta Digital Inc | Zeke.medina@meetmarigold.com |
| Thousand Oaks Marketplace, LP | moorpark@terracottagroup.com |
| College Square L.P. Investment Concepts Inc. G.P. | hubertk@icicorporate.com |
| Four Quarts & Associates, LLC | jimsavela@gmail.com |
| Gateway Buena Park, Inc. | cweatherman@paynterrealty.com |
| Mann Enterprises Inc. | mberger@sunbeltinv.com |
| New Age Kaleidoscope, LLC | rhuang@kamsangco.com |
| Pacific Castle Red Rock, LLC | glenn@city-commercial.com |
| PK I Pavilions Place LP | kbortnick@kimcorealty.com |
| Riverlakes Galleria, LLC | jessica@bynuminc.com |
| Ryan Shufflebotham, Trustee Thompson Thrift Development Inc. | rjrshuffle@gmail.com |
| Sysco | hoai-huong.le@sysco.com |
| Sysco SFS of Central Alabama | hoai-huong.le@sysco.com |
| Thompson Thrift Development, Inc Ryan Shuttlebothan | rjrshuffle@gmail.com |
| TRC MM LLC | klesa@trcretail.com |
| Tutto USA, LLC | jk@infiniadvisors.com |
| Gateway Buena Park, Inc. | averrette@athena-pm.com |
| Red Boulder, LLC | lwillems@pacificcastle.com<br>JHarris@pacificcastle.com |
| JPMorgan Chase | richard.rhyu@jpmorgan.com |
| UFG Insurance | patrick.ryder@hubinternational.com |
| **US Trustee:** United States Trustee (SA) | queenie.k.ng@usdoj.gov |

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/23/2025 | Eva Fitzhugh | Eva A. Fitzhugh |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**SERVED BY UNITED STATES MAIL**:

ASVRF Dublin Place, LP
HINES
4160 Dublin Blvd.
Dublin, CA 94568

California Dept. of Tax and Fee Adm
PO Box 942879
Sacramento, CA 94279

Campus Pointe
Commercial L.P.
255 E. River Park Circle
Suite 120
Fresno, CA 93720

Cerritos TC Property, LLC
7575 Carson Blvd.
Long Beach, CA 90808

Cheetah Digital, Inc.
72 West Adams Street, 8th Floor
Chicago, IL 60603

City of Thousand Oaks
2100 Thousand Oaks Blvd.
Thousand Oaks, CA 91362

College Square L.P. Investment
Concepts Inc. G.P.
1667 E Lincoln Ave
Orange, CA 92865

Four Quarts & Associates, LLC
4301 The Strand
Manhattan Beach, CA 90266

Gateway Buena Park Inc.
500 N. Broadway
Suite 201
Jericho, NY 11753

Mann Enterprises Inc.
1645 Carleton Drive
Hastings, MN 55033

New Age Kaleidoscope LLC
411 E. Huntington
Drive #305
Arcadia, CA 91006

Pacific Castle Red Rock, LLC
2601 Main Street, Suite 900
Irvine, CA 92614

PK I Pavilions Place LP
2429 Park Avenue
Tustin, CA 92782

Riverlakes Galleria, LLC
5601 Truxtun Ave
Suite 190
Bakersfield, CA 93309

Ryan Shufflebotham Trustee
346 E Carriage Cir.
Washington, UT 84780

Sysco
1390 Enclave Parkway
Houston, TX 77077

Sysco SFS of Central Alabama
1000 Sysco Drive
Calera, AL 35040

TRC MM LLC
4695 MacArthur Court
Suite 700
Newport Beach, CA 92660

Tutto USA, LLC
3699 Wilshire Blvd.
Suite 730
Los Angeles, CA 90010

UFG Insurance
118 Second Ave. SE
Cedar Rapids, IA 52401

Gateway Buena Park Inc.
500 N. Broadway,
#201
Jericho, NY 11753

Red Boulder, LLC
2601 Main Street,
Suite 900
Irvine, CA 92614

**US Trustee:**
United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4593

# Lodged Order

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

BELINDA M. VEGA, SB No. 208236
BMVega@Venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: 310.229.9900
Facsimile: 310.229.9901

PAUL J. BATTISTA, Fla. Bar No. 884162
PJBattista@Venable.com
Admitted Pro Hac Vice
MARIAELENA GAYO-GUITIAN, Fla. Bar No. 813818
Admitted Pro Hac Vice
ERIC D. JACOBS, Fla. Bar No. 85992
Admitted Pro Hac Vice
EJacobs@Venable.com
VENABLE LLP
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
Telephone: 305.349.2300
Facsimile: 305.349.2301

Proposed Attorneys for Debtors, The Little Brown Box Pizza, LLC and Kustom Partner, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

| | |
|---|---|
| In re:<br><br>THE LITTLE BROWN BOX PIZZA, LLC &<br><br>KUSTOM PARTNER, LLC<br><br>Jointly Administered Debtors. | Lead Case No. 8:25-bk-13452-MH<br><br>Chapter 11<br><br>Subchapter V Case<br><br>Jointly administered with Case No.8:25-bk-13453-MH<br><br>**ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) GRANTING POSTPETITION SECURITY INTERESTS AND ALLOWANCE OF SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTIONS 364(C) AND 364(D) OF THE BANKRUPTCY CODE, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF** |
| ☒ Affects All Debtors<br>☐ Affects The Little Brown Box Pizza, LLC Only<br>☐ Affects Kustom Partner, LLC Only | Date:<br>Time:<br>Place: 411 W. Fourth St.<br>Santa Ana, CA 92701 |

Upon the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") *Motion for Entry of an Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Postpetition Security Interests and Allowance of Superpriority Administrative Expense Status Pursuant to Sections 364(C) and 364(D) of the Bankruptcy Code, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief; and Supporting Declarations* (the "Motion")[1] pursuant to sections 364(c) and 364(d), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 6004 and Local Rule 4001-2, seeking entry of an order (this "

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

Order") approving the Motion, and the Court having considered the Motion, the Declarations of Kevin McCoy (the "McCoy Decl."), Anthony Gioia (the "Gioia Decl."), and Jose Padilla (the "Padilla Decl.") in support of the Motion, and the evidence submitted or adduced and the arguments of counsel made at the hearing ("Hearing"); and notice of the Motion and the Hearing having been given in accordance with Bankruptcy Rules 2002 and 4001(c) and the Hearing having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled; and it appearing to the Court that granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, is fair and reasonable, in the best interests of the Debtors, their estates, creditors, and other parties interest, and essential to preserve and maximize the value of the Debtors' business, their estates; and after due deliberation and consideration, and good cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[2]

1. Bankruptcy Filing. On December 8, 2025 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 subchapter V in the Central District of California, Santa Ana Division.

2. Debtor-in-Possession. From and after the Petition Date, the Debtors have managed their business and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. Jurisdiction and Venue. The Court has jurisdiction over the Debtors, the Debtors estates, these proceedings, and the persons and properties affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors have consented to entry of a final order on the Motion by the Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

1409.

4. Necessity for Relief Requested; Immediate and Irreparable Harm. The Debtors requested the entry of this Order pursuant to Bankruptcy Rule 4001(c) and Local Rule 4001-2. The Debtors have an immediate need to obtain financing on the terms and conditions set forth in the *Debtor-in-Possession Financing Loan Commitment Term Sheet*, dated December 23, 2025 between the Debtors and Solid Rock Commercial, LLC (the "DIP Lender") attached to this Order as **Exhibit A** (the "DIP Loan Term Sheet", and the loans advanced thereunder, the "DIP Loans") to, among other things, preserve and maximize the value of the Debtors' assets, absent which immediate and irreparable harm will result to the Debtors, their estates and creditors. The preservation and maintenance of the Debtors' assets and businesses are necessary and appropriate to maximize values available for distribution to creditors. Absent the Debtors ability to obtain the DIP Loan as set forth in the DIP Loan Term Sheet, the Debtors would not have sufficient available sources of working capital and would be unable to administer their estates, pay their operating expenses or maintain their assets, to the detriment of the Debtors' estates and creditors. Accordingly, the relief requested in the Motion and the terms herein are (i) critical to the Debtors' ability to maximize the value of their estates, (ii) in the best interests of the Debtors and their estates, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their assets.

5. Good Cause. Good cause has been shown for entry of this Order, and the entry of this Order is in the best interests of the Debtors and their estates and creditors. Among other things, the relief granted herein will permit the Debtors to preserve and maintain the value of their assets. The terms of the DIP Loan Term Sheet are fair and reasonable under the circumstances and reflect the Debtors exercise of prudent business judgment consistent with their fiduciary duties.

6. Good Faith. The DIP Term Sheet has been negotiated in good faith and at arms' length between the Debtors and the DIP Lender.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

7. Notice. The Debtors have caused notice of the Motion, the relief requested therein, the entry of this Order, and the Hearing to be served by email and mail on the following parties or their counsel: (a) the Office of the United States Trustee for the Central District of California; (b) all parties having entered an appearance in this case; and (c) has further served notice of this Motion on the Debtors twenty largest unsecured creditors. Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and of the Hearing is sufficient and complies with Bankruptcy Rules 2002 and 4001(c).

**BASED UPON THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1. Motion Granted. The Motion is GRANTED to the extent provided herein. Any objection to the relief requested in the Motion to the extent not withdrawn or resolved is hereby overruled on the merits.

2. Authorization to Obtain Postpetition Financing. Subject to the terms and conditions of this Order, the Court hereby authorizes the Debtors to obtain post-petition financing on the terms described in the DIP Loan Term Sheet to pay the obligations set forth in the budget attached to this Order as **Exhibit B** (subject to permitted variances), which attached budget has been approved by the DIP Lender (as such budget may be modified, replaced, or supplemented from time to time by the Debtors with the consent of the DIP Lender in its sole discretion, the "Approved Budget"); provided that at the times required under the DIP Loan Term Sheet or other DIP Loan Documents or upon the request of the DIP Lender, the Debtors shall provide an updated budget to the DIP Lender, and upon approval by the DIP Lender, such updated budget shall replace any prior Approved Budget and be deemed the Approved Budget for purposes of this Order and the DIP Loan Term Sheet.

3. Approval of the DIP Loan Term Sheet. The DIP Loan Term Sheet is hereby approved. The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Loan Term Sheet, and to incur, comply

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

with and perform the obligations thereunder in accordance with its terms, the Approved Budget, and this Order, and to execute, deliver and perform under all agreements and other documents which may be required or necessary for the performance by the Debtors under the DIP Loan Term Sheet (collectively with the DIP Term Sheet, the "DIP Loan Documents"). Upon entry of this Order, the DIP Loan Term Sheet and the other DIP Loan Documents shall constitute legal, valid, binding and nonavoidable obligations of the Debtors, enforceable in accordance with the terms of this Order and the DIP Loan Term Sheet. No obligation, payment, transfer, or grant of security hereunder or under the DIP Loan Term Sheet or the other DIP Loan Documents to the DIP Lender shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under applicable law (including, without limitation, under Bankruptcy Code sections 502(d), 544, and 547 to 550 or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or challenge, whether under the Bankruptcy Code or any other applicable law or regulation by any person or entity for any reason.

4. Authorization to Borrow and Make Payments Under the DIP Loan Term Sheet. Subject to the terms and conditions of the DIP Loan Term Sheet, the Debtors are hereby authorized to obtain an extension of credit (in the form of DIP Loans) pursuant to the DIP Loan Term Sheet, and make all payments and transfers of the Debtors' property as provided, permitted or required under the DIP Loan Term Sheet and this Order, including, without limitation, payment of all principal, interest, fees, and indemnities when due, under the DIP Loan Term Sheet, and pay or reimburse the DIP Lender for all present and future costs and expenses, including, without limitation, all reasonable and documented professional fees and

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

expenses paid or incurred by the DIP Lender in connection with the financing transactions as provided in the DIP Loan Term Sheet and this Order regardless of whether such amounts are in the Approved Budget.

5. DIP Liens; DIP Collateral. In order to secure the obligations under the DIP Loan Term Sheet and the other DIP Loan Documents, effective immediately upon entry of this Order and pursuant to sections 364(c) and (d) of the Bankruptcy Code, but subject and subordinate to the Carve Out (as defined below), the DIP Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected first priority priming postpetition security interests in and liens (the "DIP Liens") in and upon all assets of the Debtors, real or personal, whether now owned or hereafter acquired and wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries of the Debtors, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles (including leases), and all products and proceeds thereof (the "DIP Collateral"), provided that the DIP Collateral shall not include any and all claims or causes of action (the "Avoidance Actions") under Sections 502(d), 544, 545, 547, 548 through 551, and 553(b) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable nonbankruptcy law and the proceeds thereof.

6. The DIP Liens are granted to the DIP Lender to secure all existing and future obligations and liabilities of every kind or nature (including, without limitation, principal of, and accrued interest on, amounts advanced to the Debtors under the DIP Loan Term Sheet and the other DIP Loan Documents and all other fees, indemnity obligations, reimbursement obligations, and other obligations owing by the Debtors or their estates under or in connection with the DIP Loan Term Sheet and the other DIP Loan Documents, whether due or to become due, absolute or contingent (the "DIP Obligations").

7. Automatic Effectiveness of DIP Liens. The DIP Liens shall become valid, perfected, binding, enforceable, non-avoidable and effective liens by operation of law as of the Petition Date without any further action by the Debtors or the DIP Lender and without the necessity of executing, filing or recording any financing statements, security agreements, mortgages, filings with a governmental unit, or other documents, agreements, or instruments or the taking of any other actions (including, for the avoidance of doubt, taking possession of any collateral) to validate or perfect (in accordance with applicable law) the DIP Liens or to entitle the DIP Lender to the priorities granted herein. If the DIP Lender hereafter requests that the Debtors execute and deliver any financing statements, security agreements, mortgages, filings with a governmental unit, or other documents, agreements, or instruments considered by the DIP Lender to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby authorized to execute and deliver any such documents, agreements, and instruments to the DIP Lender, and the DIP Lender is hereby authorized to file or record any such documents, agreements or instruments in its discretion without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens. The DIP Lender, in its sole discretion, may file a copy of this Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to, or in lieu of, such financing statements, mortgages, notices of liens or similar documents, agreements, or instruments, and any such filing, recording, or similar office is directed to accept such filing as a financing statement.

8. DIP Lien Priority. Subject and subordinate to the Carve Out (as defined below), pursuant to section 364(c)(2) and 364(d) of the Bankruptcy Code, the DIP Liens are valid, enforceable, non-avoidable, and fully perfected first priority

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

priming security interests in and first priority priming liens upon all the Debtors' right, title, and interest in, to, and under the DIP Collateral, in each case, senior to any and all other security interests in and liens upon on the DIP Collateral, whether now in existence or hereafter incurred and whether arising before or after the Petition Date.

9. DIP Superpriority Claims. Subject and subordinate to the Carve Out, the DIP Lender is hereby granted, pursuant to section 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code, allowed superpriority administrative expenses claims for the DIP Obligations, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of any of the Debtors whether now in existence or hereafter incurred by the Debtors, of every kind or nature, including any and all unsecured claims, administrative expenses, adequate protection claims, priority claims or any other claims of the kind specified in, or ordered pursuant to, the Bankruptcy Code, including, without limitation, *inter alia*, sections 105, 326, 328, 330, 331, 503(b), 507, 364(c)(1), 546(c), 726, or 1114 of the Bankruptcy Code ("DIP Superpriority Claims").

10. Modification of Automatic Stay. The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to: (a) enter into, execute, deliver, perform, and comply with all of the terms, conditions, and covenants of the DIP Loan Term Sheet and execute the DIP Loan Documents and all other documents or agreements required for the Debtors' performance of its obligations under the DIP Loan Term Sheet and the creation and perfection of liens granted or contemplated thereby; and (b) pay all obligations incurred by the Debtors under the DIP Loan Term Sheet and the other DIP Loan Documents (whether principal, interest, fees, costs, expenses, indemnities, or other amounts described in) as such amounts become earned, due, and payable and without need to obtain further Court approval.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

11. Carve Out. As used in this Order, the "Carve Out" means the sum of (i) all fees due to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee; (ii) all reasonable fees and expenses of the Subchapter V trustee, (iii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Bankruptcy Code Section 726(b); and (iv) all fees and expenses allowed at any time by the Bankruptcy Court, whether by interim order, procedural order, or otherwise (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to Bankruptcy Code Sections 327, 328 or 363 (the "Debtor Professionals"); provided that nothing herein shall be construed to impair any party's ability to object to Bankruptcy Court approval of, or seek to disallow, the fees, expenses, reimbursement of expenses or compensation of any Debtor Professional.

12. Events of Default. Each of the following specified events shall constitute an event of default under the DIP Loan Term Sheet and this Order (each event of default specified below is referred to herein as an "Event of Default"):

a. any filing by the Debtors seeking to vacate or modify the entered DIP Order over the objection of the DIP Lender;

b. the filing by the Debtors of (or supporting any other party in the filing of) any pleading seeking entry of an order by the Bankruptcy Court granting any superpriority claim or lien that is senior to or *pari passu* with those granted to the DIP Lender hereunder;

c. the granting of any superpriority claim or lien senior or *pari passu* with those granted to the DIP Lender hereunder;

d. the use or application of DIP Loan proceeds in a manner not

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

provided for in the Budget;

e. the entry of a Bankruptcy Court order in any of the Chapter 11 Cases appointing a Chapter 11 trustee or examiner with expanded powers;

f. the filing by the Debtors of a Chapter 11 plan that has not been consented to by the DIP Lender;

g. the entry of an order dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; and

h. the sale of any DIP Collateral (i) without the approval of the Bankruptcy Court, or (ii) that does not indefeasibly satisfy all obligations of the Debtors under the DIP Loan.

13. Rights and Remedies upon Event of Default. Upon the occurrence of an Event of Default, then (i) the DIP Lender shall not be required to fund any additional Advances, and (ii) the DIP Lender shall be entitled to file an expedited motion for relief from the automatic stay of Section 362 of the Bankruptcy Code to the extent necessary to allow the DIP Lender in its sole discretion and upon written notice to the Debtors, to declare all obligations in respect of the DIP Loan to be immediately due and payable, and to exercise all rights and remedies available under the DIP Orders or with respect to the DIP Lender as a secured lender under

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

applicable law; *provided* that the Debtors shall waive any right to seek relief under the Bankruptcy Code to the extent such relief would restrict or impair the rights or remedies of the DIP Lender under the DIP Order or the DIP Loan Term Sheet but may contest whether an Event of Default has occurred or is continuing upon motion, notice and a hearing, and the Debtors and the DIP Lender each consents to a hearing on an expedited basis to consider (i) whether an Event of Default has occurred, and (ii) whether the Bankruptcy Court should terminate the automatic stay.

14. Section 506(c) Waiver. Subject to entry of this Order, the Debtors and their estates waive any claim under section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization upon the DIP Collateral.

15. No Marshalling/Application of Proceeds. In no event shall the DIP Lender be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the DIP Collateral or any proceeds thereof.

16. Good Faith. Based on the findings set forth in this Order and the record made during the Hearing, pursuant to sections 105, 361, 363, and 364 of the Bankruptcy Code, the Debtors and the DIP Lender are hereby found to be entities that have acted in "good faith" in connection with the negotiation of the DIP Loan Term Sheet and the entry of this Order and are entitled to the protections afforded by sections 364(e) and 363(m) of the Bankruptcy Code.

17. No Third-Party Rights. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

18. No Liability to Third Parties. In exercising any rights or remedies as

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

and when permitted pursuant to this Order, the DIP Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall it owe any fiduciary duty to the Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtors. Furthermore, nothing in this Order shall in any way be construed or interpreted to impose upon the DIP Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors (as defined in section 101(2) of the Bankruptcy Code).

19. Binding Effect of Order. The provisions of this Order shall be binding upon all parties in interest in the Chapter 11 Cases, including the any trustee that may be appointed in the Chapter 11 Cases, and the Debtors and their respective successors and assigns and shall inure to the benefit of the DIP Lender, the Debtors and their respective successors and assigns. This Order shall bind any trustee hereafter appointed or elected for the Debtors estate whether in the Chapter 11 Cases or in the event of the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

20. Survival. The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any chapter 11 plan, (ii) converting the Chapter 11 Cases to a chapter 7 case, or (iii) dismissing the Chapter 11 Cases. The terms and provisions of this Order, including the adequate protection granted pursuant to this Order, shall continue in full force and effect notwithstanding the entry of any of the foregoing orders, and such claims and liens shall maintain their priority as provided by this Order until all of the DIP Obligations are indefeasibly paid and satisfied in full in cash.

21. Findings of Fact and Conclusions of Law. This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof. To the extent that any findings of fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and to the extent that any conclusions of law are determined to be findings of fact, such conclusions of law shall be adopted as such.

22. Order Effective upon Entry. Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

23. Retention of Jurisdiction. The Court has and will retain jurisdiction and power to enforce this Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation this Order.

###

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

**DEBTOR-IN-POSSESSION FINANCING**
**LOAN COMMITMENT TERM SHEET**
**December 23, 2025**

This loan commitment term sheet (the "***DIP Term Sheet***") describes the principal terms and conditions of a debtor-in- possession loan in an amount not to exceed $1,000,000 (the "***DIP Loan***") from DIP Lender described below (the "***DIP Lender***") to the Borrowers described below (collectively, the "***Borrowers***" or "***Debtors***"). This DIP Term Sheet shall be binding upon (i) due execution by the parties hereto, and (ii) entry of an order by the United States Bankruptcy Court for the Central District of California (the "***Bankruptcy Court***") for the Debtors' Chapter 11 bankruptcy cases (the "***Chapter 11 Cases***") filed under Jointly Administered Case No. 25-bk-13453-MH on December 8, 2025 (the "***Petition Date***") under title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), approving the terms of the DIP Loan with the DIP Term Sheet annexed thereto as an exhibit (the "***DIP Order***"), in form and substance acceptable to the DIP Lender in its sole discretion.

| | |
|---|---|
| **DIP Lender:** | Solid Rock Commercial, LLC (the "***DIP Lender***"). |
| **Borrower/Debtor:** | The Little Brown Box Pizza, LLC and Kustom Partner, LLC (collectively, the "***Borrowers***" and each individually, a "***Borrower***"). |
| **Loan Amount/Funding:** | The DIP Loan proceeds shall be made available to the Debtors as a debtor-in- possession multi-draw line of credit loan facility, as follows:<br>• *Draws*: Upon entry of the DIP Order in the form attached as an exhibit to the Borrowers' motion to approve the DIP Loan and satisfaction of the other conditions precedent provided herein each in DIP Lender's sole and absolute discretion, the DIP Lender shall advance to the Debtors from time to time (each an "***Advance***") amounts in the aggregate not greater than $1,000,000 consistent with the Budget (as defined below) and the terms hereof. |
| **Term/Maturity Date:** | The maturity date (the "***Maturity Date***") of the DIP Loan shall be the earliest of:<br>• May 29, 2026;<br>• the effective date of a Chapter 11 plan (the "***Plan***") confirmed pursuant to an order entered by the Bankruptcy Court; and<br>• the occurrence and continuation of an Event of Default (as defined below). |
| **Repayment and Amortization:** | The DIP Loan shall not be subject to any amortization and shall be due and payable in full in cash on the Maturity Date. |

| | |
|---|---|
| **Prepayment:** | The Debtors may prepay the DIP Loan, in full or in part, at any time without penalty or premium, including all principal, accrued interest, fees and expenses with respect to the DIP Loan. |
| **Budget/Use of Proceeds:** | DIP Loan proceeds shall be used by the Debtors solely in accordance with the budget (the "***Budget***") set forth as **Exhibit 1**, such Budget having been approved by DIP Lender. On any weekly reporting date, the Debtors may submit to the DIP Lender an updated Budget and, if approved by the DIP Lender in their sole discretion, such updated Budget shall become the "***Budget***" for all purposes hereunder. If the DIP Lender does not approve the updated Budget, the then-current Budget shall continue to govern the Debtors' receipts and disbursements.<br><br>The Budget shall cover the period beginning on the Petition Date through the Maturity Date, setting forth all anticipated receipts and disbursements, which shall include, among other things, available cash, cash flow, trade payables and ordinary course expenses, total expenses and incremental capital expenditures, fees and expenses related to the Chapter 11 Cases (including professional fees), and other general corporate needs. |
| **Financial Reporting:** | The Debtors shall provide the DIP Lender with a detailed, line-by-line, computation of actual to Budget deviations on a weekly basis beginning on Friday of the week following entry of the DIP Order or on such other day as agreed by the DIP Lender. For the foregoing analysis, the Debtors shall provide brief commentary for each material line-item deviation (both favorable and unfavorable) when comparing actuals to Budget for all line-item variances in excess of 10% on a cumulative basis (or such higher percentage approved by DIP Lender) (the "***Permitted Variance***"). |
| **Interest:** | The interest on each Advance shall accrue at the rate of 10.00%, compounded monthly, from the date of the funding of such Advance until such Advance is paid in full. The interest shall be payable "in kind" monthly in arrears, by capitalizing the interest accrued to such monthly capitalization date and adding to the principal (after which, for the avoidance of doubt, such capitalized interest shall accrue interest from its capitalization date). All capitalized, as well as accrued and unpaid interest shall be payable in full in cash on the Maturity Date.<br><br>Interest shall be computed based on a 360-day year over the actual days elapsed, unless such computation results in the effective interest rate of the DIP Loan exceeding the maximum rate of interest allowable under applicable state and federal law. It is hereby understood and agreed upon by and between the Debtors |

| | |
|---|---|
| | and DIP Lender that the DIP Lender does not intend, under any circumstances, to charge, collect, assess or receive interest, at an effective rate, in excess of the maximum rate allowable under applicable state and federal law. |
| **Default Interest:** | Upon the occurrence of and during the continuation of an Event of Default, as defined below, the DIP Loan will automatically bear interest at a rate of 12.00% per annum, accruing monthly (on the same dates and in the same manner as the regular interest) and payable in full on the Maturity Date. Notwithstanding anything to the contrary herein, in no event shall interest exceed the maximum rate permitted under applicable law. |
| **Fees:** | The DIP Lender shall not charge any loan fees, origination fees, unused line fees, or exit fees in connection with the DIP Loan. |
| **Collateral/Other Rights:** | Subject to the Carve Out (as defined below), the DIP Obligations (as defined below) shall be secured by a priming first priority lien (the "***DIP Liens***") on all assets of the Debtors, real or personal, whether now owned or hereafter acquired and wherever located, including, without limitation, all accounts, inventory, equipment, capital stock in subsidiaries of the Debtors, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles (including leases), and all products and proceeds thereof (the "***Collateral***"), provided that the Collateral shall not include any and all claims or causes of action (the "***Avoidance Actions***") under Sections 502(d), 544, 545, 547, 548 through 551, and 553(b) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable nonbankruptcy law and the proceeds thereof. For purposes hereof, the "***DIP Obligations***" means the DIP Loan, together all amounts payable as described in the sections "Interest", "Default Interest", "DIP Lender Expenses", and "Indemnification."<br><br>Subject to the Carve Out, the DIP Liens in favor of the DIP Lender shall be senior to any and all other prepetition or post-petition liens or interests, including, without limitation, judgment liens, mechanics' liens, liens imposed by applicable covenants, declarations and restrictions, mortgages and security interests encumbering said Collateral pursuant to Sections 364(d) and 364(c)(2) of the Bankruptcy Code.<br><br>In addition to the foregoing and subject to the Carve Out, as a condition precedent to the DIP Lender's obligation to make the DIP Loan and as a material inducement to the DIP Lender, all obligations of the Debtors to the DIP Lender with respect to the DIP Loan and proceeds thereof shall at all times constitute a |

| | |
|---|---|
| | superpriority administrative expense claim against the Debtors and their estates established in the Chapter 11 Cases pursuant to Sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code, with priority and seniority over any and all other administrative expense claims in the Chapter 11 Cases now existing or hereafter arising (the "***DIP Loan Superpriority Administrative Expense Claim***"). |
| **Lien Perfection:** | All liens authorized and granted by the Bankruptcy Court approving the DIP Loan shall be deemed perfected and no further action will be required to effect such perfection. |
| **Carve Out:** | The carve out (the "***Carve Out***") shall mean the sum of (i) all fees due to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee; (ii) all reasonable fees and expenses of the Subchapter V trustee, (iii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Bankruptcy Code Section 726(b); and (iv) all fees and expenses allowed at any time by the Bankruptcy Court, whether by interim order, procedural order, or otherwise (the "***Allowed Professional Fees***") incurred by persons or firms retained by the Debtors pursuant to Bankruptcy Code Sections 327, 328 or 363 (the "***Debtor Professionals***"); provided that nothing herein shall be construed to impair any party's ability to object to Bankruptcy Court approval of, or seek to disallow, the fees, expenses, reimbursement of expenses or compensation of any Debtor Professional. |
| **Default/Remedies:** | Each of the following specified events shall constitute an event of default under this DIP Term Sheet (each event of default specified below is referred to herein as an "***Event of Default***"):<br>• any filing by the Debtors seeking to vacate or modify the entered DIP Orders over the objection of the DIP Lender;<br>• the filing by the Debtors of (or supporting any other party in the filing of) any pleading seeking entry of an order by the Bankruptcy Court granting any superpriority claim or lien that is senior to or *pari passu* with those granted to the DIP Lender hereunder;<br>• the granting of any superpriority claim or lien senior or *pari passu* with those granted to the DIP Lender hereunder;<br>• the use or application of DIP Loan proceeds in a manner not provided for in the Budget; |

| | |
|---|---|
| | • the entry of a Bankruptcy Court order in any of the Chapter 11 Cases appointing a Chapter 11 trustee or examiner with expanded powers;<br>• the filing by the Debtors of a Chapter 11 plan that has not been consented to by the DIP Lender;<br>• the entry of an order dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; and<br>• the sale of any Collateral (i) without the approval of the Bankruptcy Court, or (ii) that does not indefeasibly satisfy all obligations of the Debtors under the DIP Loan.<br>Upon the occurrence of an Event of Default, then (i) the DIP Lender shall not be required to fund any additional Advances, and (ii) the DIP Lender shall be entitled to file an expedited motion for relief from the automatic stay of Section 362 of the Bankruptcy Code to the extent necessary to allow the DIP Lender in its sole discretion and upon written notice to the Debtors, to declare all obligations in respect of the DIP Loan to be immediately due and payable, and to exercise all rights and remedies available under the DIP Orders or with respect to the DIP Lender as a secured lender under applicable law; *provided* that the Debtors shall waive any right to seek relief under the Bankruptcy Code to the extent such relief would restrict or impair the rights or remedies of the DIP Lender under the DIP Orders or the DIP Term Sheet but may contest whether an Event of Default has occurred or is continuing upon motion, notice and a hearing, and the Debtors and the DIP Lender each consents to a hearing on an expedited basis to consider (i) whether an Event of Default has occurred, and (ii) whether the Bankruptcy Court should terminate the automatic stay. |
| **Conditions:** | The DIP Lender's obligations make any advances under the DIP Loan shall be expressly subject to the following conditions precedent:<br>• The Bankruptcy Court shall have entered the DIP Order in form and substance acceptable to the DIP Lender authorizing the DIP Loan under the terms set forth in this DIP Term Sheet and the DIP Order, which DIP Order shall not have been appealed, modified, stayed, vacated, or reversed.<br>• With respect to any Advance, (i) no Event of Default will have occurred and be continuing and (ii) the draw request for any Advances submitted by the Debtors to the DIP Lender shall include a statement that the requested Advance is required in order to fund budgeted expenses for the week. |

| | |
|---|---|
| **Documentation:** | The DIP Loan shall be documented in the form of this DIP Term Sheet, duly executed by the Parties and annexed as an exhibit to the DIP Order. In the event of any conflict between this DIP Term Sheet and the DIP Order, the terms of the DIP Order shall control. |
| **DIP Lender Expenses:** | On the Maturity Date, the Debtors shall pay all reasonable fees, costs, disbursements and expenses of the DIP Lender (including all fees, costs, disbursements and expenses of the DIP Lender's counsel) incurred after commencement of the Chapter 11 Cases solely in connection with the discussion, negotiation, preparation, execution and delivery of any documents in connection with the DIP Loan and the DIP Order. All such payments shall be paid without further motion, fee application, or order of the Bankruptcy Court, but subject to customary review by the US Trustee as required by the local rules of the Bankruptcy Court. |
| **Indemnification:** | The DIP Lender and its affiliates, all of their respective officers, directors, employees, advisors and agents shall have no liability for, and shall be indemnified and held harmless by Debtors against, any losses, claims, damages, liabilities or expenses (collectively, "***Losses***") incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent such Losses are found by a presiding court to arise from the gross negligence or willful misconduct of the relevant indemnified person(s). |
| **Governing Law:** | California law shall govern this DIP Term Sheet without giving effect to any choice of law or conflict provision or rule that would cause the application of the laws of any jurisdiction. |
| **Non-Waiver:** | No failure or delay on the part of the DIP Lender to exercise any rights under the DIP Term Sheet shall operate as a waiver thereof, nor shall any single or partial exercise by DIP Lender of any right under the DIP Term Sheet preclude any further exercise thereof, or the exercise of any other right. Each and every right or remedy granted under this DIP Term Sheet or any final order relating to the DIP Loan or under any document delivered thereunder or in connection therewith or allowed to the DIP Lender in law or equity shall be deemed cumulative and may be exercised from time to time. |

IN WITNESS WHEREOF, the parties on the attached signature pages have executed this DIP Term Sheet as of December 23, 2025:

SOLID ROCK COMMERCIAL, LLC, as the DIP Lender

Signed by:
By: Carl Chang
738BA31CF9814E4...
Name: Carl Chang
Title: Member Manager

THE LITTLE BROWN BOX PIZZA, LLC, as a Borrower

By:______________________________
Name:
Title:

KUSTOM PARTNER, LLC, as a Borrower

By:______________________________
Name:
Title:

***


THE LITTLE BROWN BOX PIZZA, LLC, as a Borrower

By: [signature]
Name: Anthony J. Gioia
Title: LBBP, LLC Board Member

KUSTOM PARTNER, LLC, as a Borrower

By: [signature]
Name: Anthony J. Gioia
Title: LBBP, LLC Board Member



*** In order to comply with the Court's ten page limit on attachments to the proposed order, Mr. Gioia's signature was cut and pasted to this page. An original version of the signature pages are part of the Financing Term Sheet attached as Exhibit A to the Motion.

THE LITTLE BROWN BOX PIZZA, LLC & KUSTON PARTNER, LLC, Jointly Administered Debtors
CASE NO. 8:25-BK-13452-MH
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

## Projected Cash Flow Statement

**Source:** Debtor's historical financials and discussions with management.
**Petition Date:** 12/8/2025

| | | Week Ending, Friday | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | |
| | Notes | 12/8/2025 - 12/12/25 | 12/19/2025 | 12/26/2025 | 1/2/2026 | 1/9/2026 | 1/16/2026 | 1/23/2026 | 1/30/2026 | 2/6/2026 | 2/13/2026 | 2/20/2026 | 2/27/2026 | 3/6/2026 | *Total* |
| ***Corporate Stores*** | 1 | | | | | | | | | | | | | | |
| Sales | 2 | 276,012 | 386,417 | 331,215 | 313,235 | 313,235 | 313,235 | 313,235 | 313,235 | 323,164 | 323,164 | 323,164 | 323,164 | 349,254 | 4,201,732 |
| COGS | 3 | (65,809) | (92,132) | (78,971) | (74,703) | (74,703) | (74,703) | (74,703) | (74,703) | (77,079) | (77,079) | (77,079) | (77,079) | (83,292) | (1,002,034) |
| Sales Tax | | | | - | | | | | (165,607) | | | (138,719) | | | (304,326) |
| Labor | 4 | - | (245,654) | - | (245,654) | - | (213,795) | - | (213,795) | - | (203,108) | - | (203,108) | - | (1,325,115) |
| Tips | | - | (24,841) | - | (24,841) | - | (20,808) | - | (20,808) | - | (19,390) | - | (19,390) | - | (130,077) |
| Utilities | 3 | (9,136) | (12,790) | (10,963) | (12,378) | (12,378) | (12,378) | (12,378) | (12,378) | (13,704) | (13,704) | (13,704) | (13,704) | (12,378) | (161,969) |
| R&M | 3 | (4,885) | (6,839) | (5,862) | (5,544) | (5,544) | (5,544) | (5,544) | (5,544) | (5,720) | (5,720) | (5,720) | (5,720) | (6,181) | (74,367) |
| OpEx | 3 | (20,618) | (28,866) | (24,742) | (25,641) | (25,641) | (25,641) | (25,641) | (25,641) | (28,207) | (28,207) | (28,207) | (28,207) | (26,993) | (342,251) |
| Marketing | 3 | (9,770) | (13,678) | (11,724) | (11,088) | (11,088) | (11,088) | (11,088) | (11,088) | (11,439) | (11,439) | (11,439) | (11,439) | (12,363) | (148,734) |
| Occupancy [Rent] | 5 | - | - | | (195,321) | - | - | | - | (195,321) | - | - | - | (195,321) | (585,962) |
| **Net Cash Flow from Stores** | | **165,794** | **(38,384)** | **198,952** | **(281,934)** | **183,882** | **(50,721)** | **183,882** | **(216,328)** | **(8,305)** | **(35,482)** | **48,297** | **(35,482)** | **12,726** | **126,896** |
| ***Franchise System*** | 6 | | | | | | | | | | | | | | |
| Royalties | | 15,344 | 21,482 | 18,413 | 11,221 | 11,221 | 11,221 | 11,221 | 11,221 | 11,832 | 11,832 | 11,832 | 11,832 | 11,221 | 169,895 |
| Franchise / Successor Fees | | 800 | 1,119 | 959 | 635 | 635 | 635 | 635 | 635 | 703 | 703 | 703 | 703 | 635 | 9,500 |
| Franchisee Expenses | | (5,277) | (7,387) | (7,387) | (7,387) | (7,387) | (7,387) | (7,387) | (7,387) | (7,387) | (7,387) | (7,387) | (7,387) | (7,387) | (93,925) |
| **Net CF from Franchise System** | | **10,867** | **15,214** | **11,985** | **4,469** | **4,469** | **4,469** | **4,469** | **4,469** | **5,148** | **5,148** | **5,148** | **5,148** | **4,469** | **85,471** |
| **Total CF from Stores and Franchise** | | **176,661** | **(23,171)** | **210,937** | **(277,465)** | **188,351** | **(46,252)** | **188,351** | **(211,859)** | **(3,158)** | **(30,335)** | **53,444** | **(30,335)** | **17,195** | **212,366** |
| **Corporate Cash Outflows:** | | | | | | | | | | | | | | | |
| *Corporate - Employees* | 7 | | | | | | | | | | | | | | - |
| Ops in charge / Field Dist. Manager | | - | 10,000 | - | 10,000 | - | 13,333 | - | 13,333 | - | 13,333 | - | 13,333 | - | 73,333 |
| Marketing; Apps; menu changes | | - | 4,375 | - | 4,375 | - | 4,375 | - | 4,375 | - | 4,375 | - | 4,375 | - | 26,250 |
| Supply Chain; Analytics; Acctg | | - | 6,250 | - | 6,250 | - | 6,250 | - | 6,250 | - | 6,250 | - | 6,250 | - | 37,500 |
| HR | | - | 4,583 | - | 4,583 | - | 4,583 | - | 4,583 | - | 4,583 | - | 4,583 | - | 27,500 |
| Payroll; recruiting; docs: part-time | | - | 3,250 | - | 3,250 | - | 3,250 | - | 3,250 | - | 3,250 | - | 3,250 | - | 19,500 |
| Taxes and Benefits | | - | 5,692 | - | 5,692 | - | 6,359 | - | 6,359 | - | 6,359 | - | 6,359 | - | 36,817 |
| Corporate - Employees | | - | 34,150 | - | 34,150 | - | 38,150 | - | 38,150 | - | 38,150 | - | 38,150 | - | 220,900 |
| *Corporate - Non-Employee* | 8 | | | | | | | | | | | | | | |
| Accounting | | 2,083 | 2,917 | 2,500 | 2,823 | 2,823 | 2,823 | 2,823 | 2,823 | 3,125 | 3,125 | 3,125 | 3,125 | 2,823 | 36,935 |
| Accounting supplement to Moura | | - | - | - | 1,806 | 1,806 | 1,806 | 1,806 | 1,806 | 2,000 | 2,000 | 2,000 | 2,000 | 1,806 | 18,839 |
| Consultants | | 1,667 | 2,333 | 2,000 | 3,839 | 3,839 | 3,839 | 3,839 | 3,839 | 4,250 | 4,250 | 4,250 | 4,250 | 3,839 | 46,032 |
| Technology (non-Ad Fund) | | 833 | 1,167 | 1,000 | 2,258 | 2,258 | 2,258 | 2,258 | 2,258 | 2,500 | 2,500 | 2,500 | 2,500 | 2,258 | 26,548 |
| T&E | | 1,083 | 1,517 | 1,300 | 677 | 677 | 677 | 677 | 677 | 750 | 750 | 750 | 750 | 677 | 10,965 |
| Technology | | 833 | 1,167 | 1,000 | 2,090 | 2,090 | 2,090 | 2,090 | 2,090 | 2,314 | 2,314 | 2,314 | 2,314 | 2,090 | 24,799 |
| Insperity; Payroll Fees | | 3,333 | 4,667 | 4,000 | 4,516 | 4,516 | 4,516 | 4,516 | 4,516 | 5,000 | 5,000 | 5,000 | 5,000 | 4,516 | 59,097 |
| People Continuity [Cellphones] | | 131 | 183 | 157 | 177 | 177 | 177 | 177 | 177 | 196 | 196 | 196 | 196 | 177 | 2,316 |
| Strategic Advisor (Shawn Thompson) | | - | 20,000 | - | 20,000 | - | 20,000 | - | 20,000 | - | 20,000 | - | 20,000 | - | 120,000 |
| Corporate - Non-Employee | | 9,964 | 33,950 | 11,957 | 38,187 | 18,187 | 38,187 | 18,187 | 38,187 | 20,135 | 40,135 | 20,135 | 40,135 | 18,187 | 345,532 |
| Less Gift Card Reserve Payback | | - | - | - | - | - | - | - | - | - | - | - | - | 3,387 | 3,387 |
| *CapEx* | 9 | | | | | | | | | | | | | | |
| CapEx Remodels | | - | - | - | - | - | - | - | - | - | - | - | - | 41,526 | 41,526 |
| Closure CapEx | 10 | 833 | 1,167 | 1,000 | 1,129 | 1,129 | 1,129 | 1,129 | 1,129 | 1,250 | 1,250 | 1,250 | 1,250 | - | 13,645 |
| Maintenance CapEx | | 2,667 | 3,733 | 3,200 | 3,613 | 3,613 | 3,613 | 3,613 | 3,613 | 4,000 | 4,000 | 4,000 | 4,000 | 3,613 | 47,277 |
| Total CapEx | | 3,500 | 4,900 | 4,200 | 4,742 | 4,742 | 4,742 | 4,742 | 4,742 | 5,250 | 5,250 | 5,250 | 5,250 | 45,139 | 102,448 |
| Contingency | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,500 |
| **Total Corporate Cash Outflows** | | **23,928** | **107,449** | **28,614** | **115,765** | **41,615** | **119,765** | **41,615** | **119,765** | **46,021** | **124,171** | **46,021** | **124,171** | **85,399** | **1,024,299** |
| ***Net Cash Flow (Deficit)*** | | ***152,733*** | ***(130,620)*** | ***182,324*** | ***(393,230)*** | ***146,736*** | ***(166,017)*** | ***146,736*** | ***(331,624)*** | ***(49,178)*** | ***(154,505)*** | ***7,424*** | ***(154,505)*** | ***(68,205)*** | ***(811,933)*** |

**THE LITTLE BROWN BOX PIZZA, LLC & KUSTON PARTNER, LLC, Jointly Administered Debtors**
**CASE NO. 8:25-BK-13452-MH**
**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

## Projected Cash Flow Statement

**Source:** Debtor's historical financials and discussions with management.
**Petition Date:** 12/8/2025

| | | Week Ending, Friday | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | |
| | Notes | 12/8/2025 - 12/12/25 | 12/19/2025 | 12/26/2025 | 1/2/2026 | 1/9/2026 | 1/16/2026 | 1/23/2026 | 1/30/2026 | 2/6/2026 | 2/13/2026 | 2/20/2026 | 2/27/2026 | 3/6/2026 | *Total* |
| **Bankruptcy / Reorg Expenses** | 11 | | | | | | | | | | | | | | |
| Venable LLC - Debtor's Counsel | | | | | | 50,000 | | | | | 50,000 | | | | 100,000 |
| KapilaMukamal, LLP - FAs | | | | | | 15,000 | | | | | 10,000 | | | | 25,000 |
| Sub V Trustee Fees | | | | | | 12,500 | | | | | 12,500 | | | | 25,000 |
| **Total Bankruptcy Expenses** | | - | - | - | - | 77,500 | - | - | - | - | 72,500 | - | - | - | 150,000 |
| ***Net cash flow (deficit)*** | | $ 152,733 | $ (130,620) | $ 182,324 | $ (393,230) | $ 69,236 | $ (166,017) | $ 146,736 | $ (331,624) | $ (49,178) | $ (227,005) | $ 7,424 | $ (154,505) | $ (68,205) | $ (961,933) |
| **Total Working Capital Needs** | | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | |
| Beginning Cash | 12 | $ 316,581 | $ 469,314 | $ 338,694 | $ 521,018 | $ 150,000 | $ 219,236 | $ 150,000 | $ 296,736 | $ 150,000 | $ 150,000 | $ 150,000 | $ 157,424 | $ 150,000 | $ 316,581 |
| Net cash flow (deficit) | | 152,733 | (130,620) | 182,324 | (393,230) | 69,236 | (166,017) | 146,736 | (331,624) | (49,178) | (227,005) | 7,424 | (154,505) | (68,205) | (961,933) |
| DIP Facility Draws | 13 | - | - | - | 22,213 | - | 96,781 | - | 184,888 | 49,178 | 227,005 | - | 147,081 | 68,205 | 795,352 |
| DIP Facility Paydowns | 13 | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash Balance / Working Capital Rerserve** | | $ 469,314 | $ 338,694 | $ 521,018 | $ 150,000 | $ 219,236 | $ 150,000 | $ 296,736 | $ 150,000 | $ 150,000 | $ 150,000 | $ 157,424 | $ 150,000 | $ 150,000 | $ 150,000 |
| **Outstanding DIP Balance** | | $ - | $ - | $ - | $ 22,213 | $ 22,213 | $ 118,994 | $ 118,994 | $ 303,882 | $ 353,061 | $ 580,066 | $ 580,066 | $ 727,147 | $ 795,352 | |

**SEE ACCOMPANYING NOTES**

The Debtor from time to time makes written or oral forward-looking statements concerning expectations, beliefs, plans, objectives, future events or performance and underlying assumptions and other statements that are not historical facts. These statements are "forward-looking statements." Generally, the inclusion of the words "believe", "could", "should", "estimate", "expect", "intend", "anticipate", "will", "plan", "target", "forecast" and similar expressions identify statements that constitute "forward-looking statements." All statements addressing developments that the Debtor expects or anticipates will occur in the future, including statements relating to values, future financial condition, assets, real property and timing of their disposition, as well as statements expressing optimism or pessimism about future results, are forward-looking statements.
The forward-looking statements are based upon the Debtor's then-current views and assumptions regarding future developments and are applicable only as of the dates of such statements. By their nature, all forward-looking statements involve risks and uncertainties. The Debtor assumes no obligation to update or review any forward-looking information to reflect actual results, changes in assumptions or changes in other factors affecting forward-looking information, whether as a result of new information, future events or otherwise. There can be no assurance that the Debtor has correctly identified and appropriately assessed all factors affecting the Company and its assets. For these reasons, you are cautioned not to place undue reliance on any forward-

**THE LITTLE BROWN BOX PIZZA, LLC & KUSTON PARTNER, LLC, Jointly Administered Debtors**
**CASE NO. 825-BK-13452-MH**
**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

**Projected Cash Flow Statement**
**Notes**

**Source:** Debtor's historical financials and discussions with management.
**Petition Date:** 12/8/2025

| No. | Description |
|---|---|
| 1 | The Debtor's Store Operations Budget consists of the combined cash inflows and outflows from 16 corporate owned stores ("Corporate Owned Stores"). |
| 2 | The gross sales estimates for the Corporate Owned Stores were based on the prior year's monthly sales and reduced by a percentage of the current downward trend for each specific store. Additionally, the Company analyzed the average store sales for the four month period June through October 2025 to further corroborate the sales were reliably estimated during thisProjected Cash Flow Statement. Sales were adjusted upward [over time] based on individual renovation investments on a per store basis, see FN 8. The Gross Sales include 10% sales tax and 3% tips. The sale tax is remitted on the 20th of each month (or the 30th at quarter-end) and the tips are paid out on the same schedule as payroll. |
| 3 | The operating expenses for the Corporate Owned Stores were based on the historical expenses and estimated percentage of sales. |
| 4 | The estimated Labor expenses were based on actual labor costs including associated payroll taxes that are paid bi-weekly. These Labor expenses are adjusted [up or down] periodically based on projected sales for each Corporate Owned Store. |
| 5 | The Occupancy (rent and where applicable CAM) expense is based on the actual rent/CAM expense for each Corporate Owned Store as indicated in the Lease for each Store. The Debtor paid December rent for three Corporate Owned Stores and has not paid December rent for the other 13 stores, totaling approximately $141,000. The Debtor is currently reviewing the estimated timing to pay the outstanding December rent. |
| 6 | There are currently 29 franchise stores ("Franchise Stores") that pay in aggregate approximately 4.8% of their sales as royalties to Pieology Franchise, LLC ("Pieology Franchise"). The Debtor anticipates that 12 of these Franchise Stores will no longer contribute franchise fees to Pieology Franchise beginning sometime in January 2026. The Debtor estimated the royalites to be 5.0% percent of the prior year's monthly sales. The Franchise Expenses include software fees, accounting fees, human resource and legal fees, service contract expenses and business insurance. The net cash flow from the Franchise Stores is up streamed to The Little Brown Box Pizza, LLC. |
| 7 | The Corporate Employee estimates are based on actual salaries, wages, benefits and taxes for the corporate employees who are not designated to a specific Corporate Owned Store such as Field Managers, human resources, supply chain analytics, accounting and other consulting services. |
| 8 | The Corporate Non-Employee estimates are based on historical and actual expenses for finance/accounting, consulting, technology and payroll fees. |
| 9 | The Debtor is investing funds to renovate a number of stores. The CapEx Remodel line item is an estimate to renovate five Corporate Owned Stores beginning in March 2026. The estimate included in week ending 3/6/2026, is for a portion of the budgeted Capex expense estimated for the month of March 2026. |
| 10 | Estimated costs associated with the winddown of stores closed pre-petition. |
| 11 | The Debtor estimated the administrative expenses, including the bankruptcy professional fees, during the Projected Cash Flow Statement. The payment of professional fees is subject to court approval and application of any retainers held post-petition. |
| 12 | The estimated beginning cash balance as of the Petition Date. |
| 13 | Estimated funds required from the DIP Lender to cover cash flow shortfalls subject to Court approval. |
| | |